80   MUSHAM *et al.* v. MUSHAM.   [Sept. T.

Opinion of the Court.

SARAH JANE MUSHAM *et al.*

*v.*

WILLIAM MUSHAM.

1. TRUST—*widow taking deed of land sold to her husband.* Where a purchaser of land died without completing his payments, and afterwards the vendor, without manifesting any desire or intention to declare a forfeiture of the contract under a clause giving him such right, resold one-half of the lot to a third person, and the other half to the widow of the original purchaser, for the exact sum then due on the first contract, and the half sold to the widow was worth considerably more than the price paid by her, and she, on payment, obtained a conveyance, it was *held*, there was no forfeiture declared, and that she took the legal title in trust for the heirs at law of her husband.

2. LACHES—*does not apply where possession is not adverse.* The occupancy by a widow of lands of her deceased husband, where she has dower and homestead rights, however long continued, will not be a bar to a recovery on the part of the heir, after her death. Her possession, in such case, being consistent with the interests of the heir, *laches* can not be imputed to him.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Mr. FRANK J. CRAWFORD, and Mr. L. W. PERCE, for the plaintiffs in error.

Messrs. McCOY & PRATT, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by William Musham, in the circuit court of Cook county, against Sarah Jane Musham and others, who are his brothers and sisters, in which it is alleged that the parties are equal owners in fee, as tenants in common, of the west half of lot 13, block 9, Walcott's addition to Chicago. The bill prays for a partition of the premises, and, if practicable, a sale thereof and an equitable division of the proceeds. A hearing was had upon bill, answer, replication and proofs, and a decree rendered in favor of the

complainant, as prayed for in the bill, to reverse which the defendants have sued out this writ of error.

It appears, from the evidence, that, on the 3d day of May, 1843, Orsamus Bushnell sold the whole of lot 13 to Wm. Musham, the father of these parties. A contract for a deed was executed and delivered, which provided for a deed upon the payment of $275, as follows: $40 October 1, 1843; $35 May 1, 1844; $50 May 1, 1845; $50 May 1, 1846, and $100 May 1, 1847, with interest at the rate of seven per cent. The contract contained a provision that, if default should be made in any payment of principal or interest, when due, and for sixty days thereafter, the contract, at the option of the vendor, should be void, and all payments made forfeited. William Musham went into possession of the premises under the contract, and made the first payment when due, but the payment due May 1, 1844, was not made, and on the 24th day of August, 1844, Wm. Musham died. The contract had not, however, been declared forfeited by the vendor, nor had any steps been taken in that direction by him, nor does it appear that he claimed a forfeiture for the non-payment of the amount due. On the 18th day of November, 1844, Bushnell contracted the east half of the lot to one Cox for $175, payable in installments. On the same day, he gave Ann Musham, the widow of the deceased, a contract for the west half of the lot, on the payment of $80.93. These contracts were performed, and deeds made to the respective parties—the former in 1847, to the latter in 1848. Ann Musham continued to occupy the premises conveyed to her until her death, in 1873. Before her death, however, she devised the north half of lot 13 to plaintiffs in error, who claim the north half of the west half of the lot as devisees of Ann Musham, while complainant claims his mother held the property in trust for all the heirs, and that they all are entitled to share equally therein, regardless of the will, as heirs of their father.

The first question to be considered is, whether the contract of June 3, 1843, under which the lot was sold to William

6—87 ILL.

Musham, was ever forfeited. The record is barren of proof that Bushnell claimed a forfeiture, or that he ever, at any time, manifested a disposition to declare the contract void for the non-payment of the installment due when Musham died. It is true, Bushnell, on November 18, 1844, resold the east half of the lot to Cox, and the west half to Ann Musham, the widow of the deceased; and from this fact it might be inferred, in the absence of explanatory evidence, that the contract of sale had been declared void by the vendor, under the clause that gave him that right; but when the testimony bearing upon this transaction is considered, can it be said the original contract had been canceled and the property resold? It will be observed, at the time this resale is alleged to have been made, there was due upon the original contract $255.93. At this time there was a house on the west half of the lot, where the widow resided, worth some $500, while the other half of the lot was destitute of improvement. Now, if the property was taken back by Bushnell, and he made a second sale, is it not strange that he would sell the east half, without improvement, for $175, and on the same day sell the other half, with a house thereon which cost $500, for $80.93? Surely, business is not, ordinarily, transacted in this manner. There is another peculiar fact connected with the second sale. The $175 for which the east half sold, and the $80.93 paid by the widow for the west half, make the exact amount due on the original contract of sale on the 18th day of November, 1844. The only reasonable inference from these facts would seem to be, that Bushnell had not, in fact, exercised the right of forfeiture, but that the widow of the deceased had consummated an arrangement by which she should hold at least a portion of the property for the benefit of herself and children, who, at the time, were in destitute circumstances, by inducing a third party to come in under the original contract and take a part of the property, and pay a portion of the purchase money. We are not, however, left to conjecture upon this point. This property had been sold to William Musham, by Bushnell,

through a real estate firm in Chicago—Ogden & Jones. The books of this old firm were found, which showed a history of the transaction; but it is argued the entries in the books are not competent evidence in this case. We shall not stop to discuss that question, as its decision is not important. Witnesses who had made the entries had a right to examine the books for the purpose of refreshing their memory, and then give their evidence. This course was pursued, and from the testimony of Mr. Downs, who was a clerk in the office at the time, it is apparent that the original contract was surrendered, and a new contract made to Cox for one-half of the lot, and another one to the widow for the other half of the lot, in lieu of and for the amount of the old contract. The contract given to Ann Musham has indorsed thereon these words, "charge no commissions." This is explained by clerks who were in the office at the time. Commissions were charged on the original sale, and as no new sale had been made, no commissions were charged. The transaction was a mere transfer of papers.

From the evidence, we perceive no ground to hold that the original contract of sale was forfeited by the vendor. The facts here are entirely different from those in *Chrisman* v. *Miller*, 21 Ill. 227, and what is here said in relation to a for-feiture is not intended to militate against the doctrine announced in that case.

Did Ann Musham hold the west half of the lot as a trustee for the children and heirs of her husband? When William Musham died, he held the equitable title to the property which descended to his children. The conveyance of the legal title to the widow, subsequent to the death of the husband, was, in fact, made under and in pursuance of the contract of purchase with the deceased. She paid for the property, principally, by allowing the equitable title to one-half of the lot to go to Cox, under an arrangement made between her and the vendor of the lot. Under such circumstances, we have no hesitation in holding she took and held the legal title to the west half of

the lot as a trustee for the children and heirs of the deceased. *Seaman* v. *Cook*, 14 Ill. 501; *Stow* v. *Kimball*, 28 id. 93.

It is, however, insisted the complainant is barred by *laches*, and the claim now set up by him is stale. We do not regard this position, under the facts of this case, well taken. The widow had a dower right and homestead right in the premises. Until her dower had been assigned, she, under the statute, was entitled to the possession and use of the entire lot. Her possession and occupancy were in harmony and entirely consistent with the interest of the complainant in the property. She did not hold adverse or in opposition to the title of the complainant. Under such circumstances, her occupancy up to 1873, when she died, could not be regarded as a bar to relief on the part of complainant.

The occupation, by the widow, of lands of her deceased husband, where she has dower and homestead rights, however long continued, can not be regarded as a bar to a recovery on the part of the heir of the fee. That principle of law which bars a recovery on the ground of *laches*, has no application to such a case.

The decree of the circuit court, in our judgment, was right, and it will be affirmed.

*Decree affirmed.*