MERRILL, Administrator, Respondent, vs. COMSTOCK, Appellant.

*September 16—October 7, 1913.*

*Torts: Cause of action: Statutes: Executors and administrators: Action against person taking property of estate: Defenses: Payment of preferred claims: Presentation of claims: Circuit courts: Jurisdiction: Pleading: Counterclaim.*

1. When a right of action for a tort is given by statute and arises upon the performance or failure to perform certain acts, it must ordinarily be understood as existing only in favor of those to whom such acts are injurious and damaging.

2. Where the widow of an intestate received moneys belonging to his estate and in good faith applied them in payment of necessary funeral expenses and expenses of the last sickness of the deceased—these being preferred claims under sec. 3852, Stats.,—such payment is a good defense in an action under sec. 3259, Stats., by an administrator subsequently appointed, no damage having been done to the beneficiaries of the estate or to the administrator in his capacity as trustee for the creditors and heirs.

3. In such a case, the fact that the widow did not, within the time limited, file a claim against the estate, in the right of the preferred creditors, for the amount so paid to them, does not affect the availability of such payment as a defense.

4. The action brought by the administrator being properly in circuit court, that court has jurisdiction to grant complete relief without referring defendant to a proceeding in the county court where no relief could be given her.

5. Defendant in such case not having paid out her own money and taken property of the estate thereafter to reimburse herself, no setoff, and therefore no such pleading as a counterclaim, is necessary.

APPEAL from an order of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Reversed.*

The appeal is from an order sustaining a demurrer to the answer and counterclaim of the appellant.

For the appellant there was a brief by *Martin, Martin & Martin,* and oral argument by *Gerald Clifford* and *P. H. Martin.*

For the respondent there was a brief by *Greene, Fairchild, North, Parker & McGillan,* and oral argument by *J. R. North.*

TIMLIN, J. It appears that one J. H. Comstock died intestate at Green Bay, Wisconsin, on August 6, 1901. No administration was had on his estate until July 8, 1909, when the respondent was appointed his administrator and qualified. On the date last mentioned an order was made limiting until the first Tuesday of February, 1910, the time for presentation of creditors' claims. Notice of such order was given by publication, and on the date last mentioned one George Gerard presented to the county court and had allowed a claim against said estate for $8,663.65. No other claims were presented or filed and no application made to extend the time for presenting claims, which time has expired. The administrator has no assets of the estate. At the time of his death J. H. Comstock had on deposit upon open account in a bank at

Green Bay $665. At the same time the Diamond Match Company owed said Comstock $548.24. On or about August 15, 1901, the appellant, *Eustacia Comstock*, obtained payment of said deposit from the bank and, as alleged, embezzled and converted the same to her own use and at about the same time collected the said sum from the Diamond Match Company and embezzled and converted the same to her own use.

The complaint demands judgment against the appellant according to the provisions of sec. 3824, Stats., for $2,426.48, being double the sums converted. The answer admits the foregoing except the averments of conversion, embezzlement, or other wrongdoing; and avers that appellant is the widow of said deceased and received the two items mentioned in the complaint, which she, with the consent of his children and heirs at law and in good faith, immediately disbursed in payment of the proper and necessary funeral expenses of said deceased and in payment of the necessary and reasonable expenses of his last sickness. Matters in the complaint not admitted are denied generally, and this is followed by a counterclaim reiterating the particular facts aforesaid.

By statute in this state a demurrer to a complaint may not be sustained if the pleading states any cause of action either in law or in equity. Sec. 2649a. The defendant may also plead as many defenses as he has, whether they be legal or equitable. Sec. 2657. Prior to the enactment of sec. 3259, Stats., and prior to 1849, it had become common law that one who converted the goods of the deceased or intermeddled therewith and disposed of them as an executor or administrator might do would be held as an administrator *de son tort* and liable for the value of such goods at the suit of a creditor of deceased or at the suit of the rightful administrator or at that of a legatee. It was also well settled that in such an action the executor *de son tort* was entitled to be credited with lawful claims against the estate which he had discharged, and

that the plaintiff must, in order to recover, show a loss or damage to the interest which he represented occasioned by the unlawful act. For illustration: If the intermeddler had paid out all of the estate which came into his hands in discharge of a valid preferred claim against the estate, the general creditor suing, or the administrator plaintiff who represented only such general creditors of the second class and legatees or heirs, could not recover. *Glenn v. Smith,* 2 Gill & J. 493, 20 Am. Dec. 452; 18 Cyc. 1363 and cases; 1 Williams, Executors (6th Am. ed.) 308, 316; 2 Black. Comm. 507; 1 Woerner, Am. Law of Adm'n, §§ 194, 195. The widow of the deceased, perhaps because of her prior right to administration, her right to an allowance for support, and right to provide burial and funeral, seems to have been favored in the law, at least to the extent that she was not held to be a mere volunteer or an officious intermeddler, but she was not exempt from the liabilities or deprived of the defenses of an executrix *de son tort.*

Where a widow filed a claim against the estate of her husband for moneys advanced by her to a former administrator with which to pay debts, taxes, and funeral expenses, it was said that a widow has such an interest in the settlement of her deceased husband's estate as will, where it is beneficial thereto, enable her to be subrogated to the rights of creditors whose claims have been paid by her. *Livingston v. Newkirk,* 3 Johns. Ch. 312; *Mitchell v. Mitchell,* 27 Tenn. 359; *Williams v. Williams,* 2 Dev. Eq. 69, 22 Am. Dec. 729; Sheldon, Subrogation, § 3. "Her right to recover against the estate in such case rests on the doctrine of subrogation, and derives no force from any contract with the executor or administrator." *Brown v. Forst,* 95 Ind. 248.

Where a widow advanced money to the administrator of her husband's estate to be used by him in paying off just and valid claims against such estate, she is subrogated to the rights of the creditors whose claims were paid by her. *Neptune v.*

*Tyler,* 15 Ind. App. 132, 41 N. E. 965; *Kelley v. Ball,* 14 Ky. Law Rep. 132.   See, also, cases cited in 37 Cyc. 392, 393.

At common law and by statute in this state (sec. 3852) the necessary funeral expenses and the expenses of the last sickness of decedent are entitled to priority in payment out of the assets of the estate over the claims of general creditors. See, also, *Herning v. Holt L. Co.* 153 Wis. 101, 107, 140 N. W. 1102.

Where a widow took property belonging to her deceased husband's estate and never accounted for the same to the administrator, but paid it upon a note of $500 against the estate, she was not liable to the heir at law in equity for the value of the property.   This under the common-law rule relative to the liabilities of an executor *de son tort.    McConnell v. McConnell,* 94 Ill. 295.   Disregarding rules based upon the form of action, it is safe to say that this common-law rule rested primarily upon the consideration that the plaintiff was not damaged by such act of the third person.   Where a man died leaving about $100 worth of personal property and claims amounting to $16, and his widow without administration sold the personal property and collected the claims and with the money paid preferred claims against the estate to the amount of $97, then with the small balance left and her own money paid other debts of the estate to the amount of about $100, it was ruled that the small balance left in her hands after paying the preferred claims not being sufficient to pay the expenses of taking out administration, the creditor had lost nothing by her not doing so and therefore could not recover.   *Bogue v. Watrous,* 59 Conn. 247, 22 Atl. 31.   A somewhat similar ruling was made in *Portman v. Klemish,* 54 Iowa, 198, 6 N. W. 265.

Where a man died leaving no property but his wearing apparel, and his widow paid the expenses of his last sickness and his burial and gave to his brother a suit of deceased's cloth-

ing of less value than the amount thus paid out by her, it was held that she was not liable for conversion of this suit of clothes. *Taylor v. Moore,* 47 Conn. 278. The court said:

"The law not seeing in such acts any injury to creditors or heirs has not undertaken to prevent them. According to the plaintiff's suggestion the apparel must either be kept to be eaten by moths or the value of it must be consumed in the process of distribution; in neither case to the benefit of himself or any other creditor."

These common-law rules are not denied by respondent's counsel. But they contend that sec. 3259, Stats., works a change. That section provides that "No person shall be liable to an action as executor of his own wrong for having received, taken or interfered with the property of a deceased person; but shall be responsible as a wrongdoer in the proper action to the executors or general or special administrators of such deceased person for the value of any property or effects so received or taken and for all damages caused by his acts to the estate of the deceased." This section came in as part of a scheme for the distribution by the administrator of the assets of the estate *pro rata* among all the creditors of the decedent of equal rank where such assets were insufficient to pay in full. It was therefore necessary to make some change with reference to the law relating to executors *de son tort.* That particular form of action was abolished and the person who took or interfered with the property of the deceased person was made responsible as a wrongdoer, not to the creditors or legatees, but to the executors or general or special administrators of the deceased person.

In *McKeigue v. C. & N. W. R. Co.* 130 Wis. 543, 110 N. W. 384, the administrator sought to recover damages under the death statute for negligently causing the death of his decedent, one Broderick. The answer, among other defenses, averred that Broderick died intestate leaving no widow, descendants, or ancestors surviving him and but one heir at

law, to wit, a sister Johanna, who made claim against the defendant for damages on account of Broderick's injuries, and that the defendant compromised and settled said claim with said Johanna and paid her $1,000 in full and received from her a release and discharge of all claims resulting from the injury and death of Broderick. There were other assets ample for the payment of debts. This defense was held good. It was considered that the administrator, while invested with the legal title to the personal property and rights of action of the estate, holds that title charged with the duty of managing and disposing of this property in accordance with the provisions of the will or of the law. It will be noticed that part of the damages accrued to the estate and part arose under the death statute.

"His duties are trust duties. In all essential respects he is regarded in courts of equity as a trustee. 2 Woerner, Am. Law of Adm'n (2d ed.) §§ 383, 500. In the broad sense of the word a trustee is one 'in whom some estate, interest, or power in or affecting property is vested for the benefit of another.' Hill, Trustees, 41. . . . In case of an administrator the beneficiaries of the trust are the creditors of the estate and the heirs at law of the intestate."

The damage done by conversion of the assets of the estate is done to the beneficiaries of the estate or to the administrator in his capacity as trustee for the creditors and heirs. If the answer shows that no damage has been done to the estate or to the administrator in this capacity there is no legal wrong under sec. 3259, *supra*. The law does not insist upon the idle ceremony of collecting this money from the widow for the purpose of repaying it to the same persons to whom she has already paid it. Nor has she made it available to the general creditors by such payment. Nor does equity take money away from any person at the suit of a trustee for an inferior class of creditors where such person would be by that same payment entitled by subrogation to the status of a pre-

ferred creditor. Having applied the assets of the estate in
payment of these preferred claims, neither creditors of the
second class nor heirs were aggrieved by such payment.
This would seem to be clear on principle and sustained by the
logic of *McKeigue v. C,. & N. W. R. Co., supra.* There
was no wrong done to the other beneficiaries of the estate at
the time the widow took and applied these assets in payment
of the preferred claims. Her act in so doing did not become
such a wrong because of the subsequent administration or be-
cause the widow failed to file her claim in the right of pre-
ferred creditors in such subsequent administration.

In *Rutherford v. Thompson,* 14 Oreg. 236, 12 Pac. 382,
there was a statute almost identical with sec. 3259, and it was
held that such statute took away from the creditor the rem-
edy of the latter to charge the intermeddler as executor *de
son tort* and required the appointment of an administrator
and suit brought in the name of the latter. The creditor can
no longer pursue his action against the intermeddler, but the
action must be brought by the administrator of the estate as
trustee to recover and hold the assets as a fund to be disposed
of according to law. Quoting from the opinion:

"And whether we consider the intermeddler as an executor
*de son tort,* or as wrongdoer, the liability to respond to the
rightful executor or administrator is the same, and unaffected,
and the law unchanged. The fiction of office may be gone, but
the unauthorized act of intermeddling remains, to be dealt
with judicially, according to the principles of right and jus-
tice, as applied by law in such cases. Now, from the fact
that the intermeddler with the goods of a deceased is only
liable to respond to the rightful executor or administrator for
the value of the goods, etc., it by no means follows, if what he
did was of benefit and not injury to the estate, as the payment
of funeral expenses, or debts of the deceased, or charges such
as the rightful representative might have been compelled to
pay, he would not be allowed to show the same in mitigation
of damages in an action of trover, instituted by such executor
or administrator. In thus compelling him to account with

only the rightful representative, the statute does not purport or undertake to deprive him of any proper or legitimate defense. The title of executor *de son tort* may be repudiated, but the justice of the law will remain to distinguish between acts which are beneficial and those which are injurious to an estate."

The rules of the common law are in force except so far as displaced by the statute in question. These rules enter into and affect the construction of this statute. When a right of action for a tort or wrong is given by statute and arises upon the performance or failure to perform certain acts, it must ordinarily be understood as existing only in favor of those to whom such acts are injurious and damaging. Where the statute declares one liable as a wrongdoer, that word ordinarily imports an invasion of right to the damage of the party who suffers such invasion. 1 Cooley, Torts (3d ed.) pp. 82, 88. In those cases in which the law does not conclusively presume damages, it is always a defense to an action for a tort or wrong to show that the plaintiff sustained no damage.

This case being properly in the circuit court, that court has jurisdiction to administer complete relief without referring the defendant to a useless proceeding in the county court, where it must be conceded that no relief could now be given her. A court of equity will take jurisdiction of matters cognizable in the county court when that court cannot give an adequate and complete remedy as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. *Meyer v. Garthwaite*, 92 Wis. 571, 576, 66 N. W. 704. The county court could do nothing for the defendant here. If she had paid out her own money upon these preferred claims she might file a claim against the estate in county court, but she has not done so. She can only resist an action by the administrator or begin a suit in equity for subrogation. The administrator has brought her into cir-

cuit court and the county court has no general equity juris-
diction.    The fact that the defendant's claim against the es-
tate, if she had one, would be now barred by reason of her fail-
ure to present it in county court, does not affect either her
equity to be subrogated to the claims of the preferred creditors
or her right to resist the recovery here sought.    The rights
of the parties were fixed by the transaction long anterior to
the time for filing claims, and the administrator representing
general creditors never had a right of action against the de-
fendant upon the facts stated in the answer, because as to
him and the interest which he represents she was not a wrong-
doer, if the answer be true.    Under this answer the defend-
ant may show the amount due for expense of the last illness
and what is a reasonable amount to be allowed for funeral
expenses, and this may or may not consume the whole estate
in question.    The affirmative averments of this answer are
by statute at issue without replication, and the plaintiff may
recover only by showing an actual damage to the estate, or,
in other words, that the amounts alleged to have been paid
out by the widow for the purposes aforesaid were not paid out
at all or were excessive, either as not due for the last sickness
or as unreasonable in amount for the funeral, but the answer
is not subject to demurrer.    In a case like this, where the de-
fendant has not paid out her own money and taken money or
property of the estate thereafter to reimburse herself, no set-
off, and therefore no such pleading as a counterclaim, is
necessary.

　　　*By the Court.*—Order reversed, and the cause remanded
for further proceedings according to law.

MARSHALL, J., dissents.